UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUGO DIAZ BETANCOURT,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, TODD BLANCHE, Acting Attorney General, TODD M. LYONS, Acting Director, Immigration and Customs Enforcement, JESUS ROCHA, Acting Field Office Director, San Diego Field Office, CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center,<br><br>Respondents. | Case No.:   26-CV-2640 JAO (MSB)<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 1) |

Presently before the Court is Petitioner Hugo Diaz Betancourt's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1).  Also before the Court are Respondents Markwayne Mullins' (Secretary of the Department of Homeland Security ("DHS")), Todd Blanche's (Acting Attorney General), Todd M. Lyon's (Acting Director, Immigration and Customs Enforcement ("ICE")), Jesus Rocha's (Acting Field Office Director, San Diego Field Office), and Christopher LaRose's (Warden at Otay Mesa Detention Center) Return in opposition to the Petition (ECF No.

26-CV-2640 JAO (MSB)

4) and Petitioner's Traverse (ECF No. 5). For the reasons set forth below, the Court **GRANTS** the Petition for Writ of Habeas Corpus.

## BACKGROUND

Petitioner, a native and citizen of Nicaragua, alleges he's been in ICE custody since November 18, 2025, primarily at Otay Mesa Detention Center. *See* ECF No. 1 at 21 ¶¶ 1, 7; *see also* ECF No. 4-1 ¶¶ 5, 11. Petitioner last entered the United States in 2021, but was arrested and charged with illegal reentry, for which he was sentenced to 28 months in custody. *See* ECF No. 1 at 21 ¶ 2. After his sentence, but while in immigration custody, Petitioner requested asylum, and on March 4, 2024, an Immigration Judge granted him withholding of removal to Nicaragua under the Convention Against Torture ("CAT"). *See id.* ¶¶ 3–4; ECF No. 4-1 ¶ 9. He was released from immigration custody the next day. *See id.* ¶ 5. A few months later, Petitioner was convicted of a DUI, so his federal supervised release was revoked, and he was sentenced to 14 months' custody. *See id.* ¶ 6. Upon Petitioner's release from his sentence for violation of supervised release, ICE took him into custody on November 18, 2025 to process him for third country removal. *See id.* ¶ 7; ECF No. 4-1 ¶ 11.

Petitioner states that since he's been in ICE custody, no ICE agent has spoken to him about getting travel documents for his removal, but that one woman asked him if he wanted to go to Mexico, to which he replied "no." *See* ECF No. 1 at 21 ¶ 8; *see also* ECF No. 4-1 ¶ 14 (noting that someone from Enforcement and Removal Operations ("ERO") spoke to Petitioner). The government reports that ICE sent an inquiry requesting third country removal to ICE's ERO Removal and International Operations Division Headquarters ("HQRIO"). *See* ECF No. 4-1 ¶ 12. On January 5, 2026, HQRIO identified Mexico as a possible third country for Petitioner's removal. *See id.* ¶ 13. Two days later, a solo ERO official spoke to Petitioner about removal to Mexico, which he declined. *See id.* ¶ 14. Since then, HQRIO again identified Mexico as an option on February 10, 2026, *see id.* ¶ 16, but on April 16, 2026, "due to low numbers for third country removals to Mexico, Petitioner's case was not accepted for repatriation,"

26-CV-2640 JAO (MSB)

meaning Mexico did not accept him. *See id.* ¶ 17; *see also* ECF No. 5 at 5. On April 29, 2026, ICE sent another email to HQRIO to get an update on third country removal but apparently has not received a response. *See id.* ¶ 18.

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner claims that his continued detention violates *Zadvydas v. Davis*, 533 U.S. 678 (2001) and 8 U.S.C. § 1231 because his removal is not likely in the reasonably foreseeable future. *See* ECF No. 1 at 7–12. Petitioner also argues that ICE's policies threaten his removal to a third country without adequate notice and an opportunity to be heard in violation of the Fifth Amendment, the CAT, and implementing regulations. *See id.* at 12–16. The Court addresses each in turn.

### A.    Petitioner's Detention and *Zadvydas*

When an alien is ordered removed, they must be detained for ninety days (90) pending the government's efforts to secure their removal to a third country. *See id.* § 1231(a)(2). This ninety-day period is referred to as the "removal period." *Id.* § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-

period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release. *Id.* at 700.

"[T]he removal period begins when an alien is 'ordered removed,' and the removal order becomes 'administratively final.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 534 (2021).

Section 1231(a)(1)(B) states that:

> The removal period begins on the latest of the following:
> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

The Court finds that Petitioner has satisfied his initial burden.[1]  First, Petitioner cannot be returned to his home country after the Immigration Judge's grant of withholding of removal to Nicaragua.  *See* ECF No. 1 at 10; ECF No. 4-2.  Second, as Petitioner asserts, Respondents have yet to provide documentation for removal to a third country.  *See* ECF No. 1 at 10–11 (citing *Pena-Gil v. Lyons*, 2025 WL 3268333, at *3 (D. Colo. Nov. 24, 2025) (granting petition where government "produced no documentation regarding petitioner's deportation to a third country and were twice unsuccessful in deporting petitioner to Mexico"); *see also D.A.M. v. Noem*, 2026 WL 146547, at *2 (S.D. Cal. Jan. 20, 2026) (citing *Pena-Gil*, 2025 WL 3268333, at *3).  Instead, someone from ERO asked Petitioner if he would be willing to be removed to Mexico, which he declined, and Respondents have otherwise failed to remove him to Mexico in the intervening months despite considering it a viable option.  *See* ECF No. 4-1 ¶¶14–18.  Nor have Respondents identified any other potential third countries beside Mexico.  Finally, Petitioner raises doubt that Mexico would even accept him without his consent.  *See* ECF No. 1 at 11 (collecting cases where Mexico refused to accept a person designated for third country removal without that person's agreement); *see also Arenado-Borges v. Bondi*, 2025 WL 3687518, at *4 (W.D. Wash. Dec. 19, 2025) ("[T]he record suggests Mexico's acceptance may be contingent on the noncitizen's consent.").  Because Petitioner has shown good reason to believe he will not be removed in the reasonably foreseeable future, the burden now shifts to Respondents to rebut Petitioner's showing.  *Zadvydas*, 533 at 701.

Respondents argue that Petitioner cannot show there is no significant likelihood of removal in the reasonably foreseeable future because ICE is actively seeking a third country for removal.  *See* ECF No. 4 at 5–7.  But after ICE's efforts to remove Petitioner to Mexico failed, *see* ECF No. 4-1 ¶¶ 14, 17, Respondents now offer little more than

---

[1] Respondents argue in their return that Petitioner's case is premature because Petitioner had been in detention for less than six months.  *See* ECF No. 4 at 6.  But, as of May 18, 2026, the six-month period of presumed reasonableness indisputably elapsed.

26-CV-2640 JAO (MSB)

insufficient boilerplate language in support of their contention that Petitioner's removal is reasonably imminent.  *See Azzo v. Noem*, 2025 WL 3535208, at *3 (S.D. Cal. Dec. 10, 2025) ("Courts in this circuit have regularly refused to find [the Government's] burden met where [the Government has] offered little more than generalizations regarding the likelihood that removal will occur." (citations omitted)).  For example, Respondents provide a declaration that states that ICE "continues to diligently seek to identify a third country for Petitioner's removal and believes there is a significant likelihood of removal in the reasonably foreseeable future," ECF No. 4-2 ¶ 17, but all Respondents have done since "Petitioner's case was not accepted for repatriation," *id.* ¶ 18, is send one email to HQRIO asking for an update on third country removal.  Indeed, as Respondents' statement reveals, ICE has not even identified a third country at this time.  *See Azzo*, 2025 WL 3535208, at *4 ("Respondents have not even identified a third country to which they plan to remove Petitioner, much less submitted a travel document or provided an estimate for how long it would take this unidentified third country to respond."); *Grishchenko v. Noem*, 2025 WL 3675070, at *2 (S.D. Cal. Dec. 17, 2025) ("Respondents do not identify any potential countries which might accept Petitioner's third country removal, or any factors related to Petitioner or people like him which might make a future removal attempt successful when others have failed.").  The Court thus concludes that Respondents have failed to rebut Petitioner's showing that there is no significant likelihood of removal.

**B.    Third-Country Removal**

Based on ICE's current policy regarding notice and third country removal, Petitioner argues that if Respondents are able to identify a third country and attempt to effectuate that removal, Petitioner would face removal without adequate notice or an opportunity to be heard in violation of the Due Process Clause, the CAT, and implementing regulations.  *See* ECF No. 1 at 12–13.

In support of his Petition, Petitioner includes a July 9, 2025 memo from ICE Director Todd Lyons ("ICE Memo") titled "Third Country Removals Following the

26-CV-2640 JAO (MSB)

Supreme Court's Order in Department of Homeland Security v. D.V.D., No. 24A1153 (U.S. June 23, 2025)." *See id.* at 24–25.  The ICE Memo provides:

> If the United States has received diplomatic assurances from the country of removal that [noncitizens] removed from the United States will not be persecuted or tortured, and if the Department of State believes those assurances to be credible, the [noncitizen] may be removed without the need for further procedures. ICE will seek written confirmation from the Department of State that such diplomatic assurances were received and determined to be credible.... In all other cases, ICE must comply with the following procedures:

> - An ERO officer will serve on the alien the attached Notice of Removal. The notice includes the intended country of removal and will be read to the alien in a language he or she understands.

> - ERO will <u>not</u> affirmatively ask whether the alien is afraid of being removed to the country of removal.

> - ERO will generally wait at least 24 hours following service of the Notice of Removal before effectuating removal. In exigent circumstances, ERO may execute a removal order six (6) or more hours after service of the Notice of Removal as long as the alien is provided reasonable means and opportunity to speak with an attorney prior to removal.

> - Any determination to execute a removal order under exigent circumstances less than 24 hours following service of the Notice of Removal must be approved by the DHS General Counsel, or the Principal Legal Advisor where the DHS General Counsel is not available.

> - If the alien <u>does not</u> affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours, ERO may proceed with removal to the country identified on the notice. ERO should check all systems for motions as close in time as possible to removal.

> - If the alien <u>does affirmatively state</u> a fear if removed to the country of removal listed on the Notice of Removal, ERO will refer the case to U.S. Citizenship and Immigration Services (USCIS) for a screening for eligibility for protection under section 241(b)(3) of the INA and the Convention Against Torture (CAT). USCIS will generally screen the [noncitizen] within 24 hours of referral.

26-CV-2640 JAO (MSB)

*Id.*

Respondents defend the policies, *see* ECF No. 4 at 7 (citing ECF No. 4-1 ¶ 21), but the Court agrees with those other cases that have concluded that the procedures laid out in the ICE memo contravene Ninth Circuit precedent and likely violate due process. *See Azzo*, 2025 WL 3535208, at *7–8; *Esmail v. Noem*, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). *Azzo* succinctly summarizes recent case law that the Court finds persuasive:

> As several courts have held, the policies in the ICE memo are "contrary to Ninth Circuit precedent." *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases). A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Nguyen v. Scott*, — F. Supp. 3d —, 2025 WL 2419288, at *18 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)). "Both the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen*, 2025 WL 2419288, at *18 (quoting *Aden*, 409 F. Supp. 3d at 1009). "Failing to notify individuals who are subject to deportation that they have the right to apply . . . for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. INS*, 180 F.3d 1033, 1041 (9th Cir. 1999).
>
> The court in *Esmail v. Noem* analyzed how the policies in the ICE Memo "present due process issues." Case No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *6–7 (C.D. Cal. Sept. 26, 2025). First, when the third country "has provided diplomatic assurances that aliens removed from the United States will not be persecuted or tortured . . . the alien may be removed *without the need for further procedures*." *Id.* at *7 (emphasis in original). Because "the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims, this approach is insufficient." *Id.* (cleaned up). Second, when the third country has not provided such assurances, ICE "will not affirmatively ask whether the alien is afraid of being removed to that country." *Id.* This "forces the

26-CV-2640 JAO (MSB)

noncitizen to assert a right he may not know that he has," which "'violates both INS regulations and the constitutional rights to due process.'" *Id.* (cleaned up) (quoting *Andriasian*, 180 F.3d at 1041).

*Id.* at *7–8. The Court adopts the reasoning and conclusion of *Azzo*, and those cases on which it relies. *See also Elshourbagy v. Bondi*, 817 F. Supp. 3d 1102, 1114–16 (W.D. Wash. 2025); *Vishal v. Chestnut*, 811 F. Supp. 3d 1179, 1186–89 (E.D. Cal. 2025); *Esmaeili v. Noem*, 2026 WL 240661, at *6 (S.D. Cal. Jan. 29, 2026).

Thus, the Court **GRANTS** the Petition.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** the Petition for Writ of Habeas Corpus (ECF No. 1). Accordingly:

1. Respondents are **ORDERED** to immediately release Petitioner from custody under the prior conditions of supervision;

2. Respondents are **ENJOINED** from re-detaining Petitioner under 8 U.S.C. § 1231(a)(6) unless and until Respondents obtain a travel document for his removal and follow all applicable statutory and regulatory procedures.

3. Respondents and their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are **PROHIBITED** from removing Petitioner to a third country without notice and a meaningful opportunity to be heard, following the process laid out in *D.V.D. v. United States Dep't of Homeland Sec.*, 2025 WL 1453640 (D. Mass. May 21, 2025).

4. The Parties are **ORDERED** to file a Joint Status Report by <u>May 26, 2026</u>, confirming that Petitioner has been released. As this concludes the litigation in this case, the Clerk of Court **SHALL CLOSE** the file.

///

///

///

///

26-CV-2640 JAO (MSB)

**IT IS SO ORDERED.**

Dated:  May 19, 2026

Jill A. Otake
United States District Judge

26-CV-2640 JAO (MSB)